# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SHAIRIQ SEABROOKS, <br> # 431620, <br><br> Plaintiff, <br><br> v. <br><br> CORE CIVIC, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> )    No. 3:17-cv-01328 <br> )    Judge Trauger <br> ) <br> ) <br> ) <br> ) <br> ) |

## M E M O R A N D U M

Plaintiff Shairiq Seabrooks, an inmate of the Hardeman County Correctional Center in Hartsville, Tennessee, filed this *pro se, in forma pauperis* action under 42 U.S.C. § 1983 against Core Civic, Core Civic Health Dept., Mr. f/n/u Mitchell, Mr. f/n/u Green, Mr. f/n/u Ramos, Mr. f/n/u Roberts, Mr. f/n/u Robertson, Mr. f/n/u Holloway, Mr. f/n/u Baker, Mr. f/n/u Martinez, Dr. John Doe, and John/Jane Does 1-15, alleging violations of the Plaintiff's civil rights. (Docket No. 1).

The plaintiff's complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* §

1

1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**II.      Section 1983 Standard**

The plaintiff brings his complaint pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the

Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

**III. Alleged Facts**

The complaint alleges that, on January 24, 2017, the plaintiff arrived at the Trousdale Turner Correctional Center ("TTCC"). While exiting the bus, the plaintiff noticed three members of the Crips gang (John Does 12, 13, and 14) acting in a threatening way toward the plaintiff. The plaintiff became scared because he was incarcerated for killing the brother of John Doe 14. Another inmate told the plaintiff that the gang members were armed with shanks. Fearing for his physical safety, the plaintiff refused to get off the bus.

The plaintiff communicated his concerns to corrections officer John Doe 1 and asked for an "incompatible," meaning the plaintiff would be placed in protective custody until he could be transferred to another facility. John Doe 1 gave the plaintiff the appropriate form for making an incompatible request and asked the plaintiff to identify out of a group of photographs the brother of the victim in the plaintiff's crime.

On the same day, the plaintiff also informed corrections officers John Doe 2 and Jane Doe 3 of his concerns. The officers allegedly informed Crips gang members of what the plaintiff had told them and made comments to the plaintiff such as he "was not a real nigga, [he] was a snitch, [he] was a coward, [he] was shaky . . . ." (Docket No. 1 at 7). They told the plaintiff that they would "make sure" he went in a unit with Crips gang members. (*Id.*) After speaking with John Doe 1, John Doe 2 and Jane Doe 3 conspired to place the plaintiff in a unit with Crips gang members. They also placed inmate David Bibbs in the same unit. Bibbs was the plaintiff's co-defendant in the crime of killing a Crips gang member.

On the evening of January 24, 2017, the plaintiff heard inmates talking to corrections officer

3

Jane Doe 4 outside of the plaintiff's cell. These inmates, who were Crips gang members, asked Jane Doe 4 to open the plaintiff's door once he was asleep. The plaintiff then jammed his door shut with a brush so it would not open and stayed awake all night. Jane 4 Doe continuously checked his cell throughout the night to see if he was asleep. The next morning, the plaintiff repeatedly pressed the emergency call button and asked to be removed from his cell, but no one assisted him.

On the afternoon of January 25, 2017, corrections officer Jane Doe 5 came to retrieve the plaintiff for his shower. He declined and would not open his door due to fears about his safety. Jane Doe 5 yelled to the Crips gang members, telling them that the plaintiff "had did something to the door and it would not open." (Docket No. 1 at 9). Jane Doe 3 walked into the unit and stated that "she tried to give them the chance to kill" the plaintiff. (*Id.*) Jane Doe 5 left and asked Bibbs if he wanted a shower. He exited his cell, Crips gang members ambushed him, and killed him. Shortly afterwards, John Doe 6 entered the unit and called for medics. When the medics arrived, Crips gang members asked if Bibbs was dead. The medics said yes, and the Crips gang members celebrated and told the plaintiff that "he was next." (*Id.* at 10).

The plaintiff told John Doe 6 that the plaintiff needed to get out of this unit. At first, John Doe 6 "seemed to be helping" the plaintiff, but "then for some reason . . . stopped helping [the plaintiff] and started helping [Crips gang members]." (*Id.*) He created a situation where the Crips gang members could enter the plaintiff's cell and kill him. (*Id.* at 11). The plaintiff begged for his life while the Crips gang members taunted him "about how they would kill [the plaintiff] and bragged that their homeboy had a funneral [sic] and David Bibbs would not have a funneral [sic]." (*Id.*) The plaintiff believes that John Doe 6 assisted the Crips gang members in flushing Bibbs's body down the toilet in pieces. (*Id.*) The plaintiff was so upset that he nearly committed suicide by tying a sheet around his neck. (*Id.*)

4

A nurse came to the plaintiff's cell, and he told her what had happened. He begged her to place him in medical on suicide watch to get him out of the unit or to at least stay with him so the Crips gang members would not kill him. The nurse, Jane Doe 7, refused his requests. Another nurse, Jane Doe 8, subsequently came to see the plaintiff, he made the same requests to her, and she also refused to help.

The plaintiff began yelling for help and begging John Doe 6 to help him. John Doe 6 "told the Crips gang members in the cell next to [the plaintiff] to hurry up, and that he wanted [the plaintiff's] tongue cut out [his] mouth." (*Id.* at 12). The plaintiff then attempted to kill himself by cutting the veins in his wrist, arms, and neck. Corrections officer John Doe 9 came by, saw the plaintiff "bleeding out," and called a code. (*Id.*) As the plaintiff was being taken out of his cell by medics, Crips gang members yelled to John Doe 6, asking him to let them "finish off" the plaintiff. (*Id.*)

When the plaintiff awoke at the hospital, officers told him that no one had been killed at the facility. The plaintiff subsequently was transferred to the DeBerry Special Needs Facility ("DSNF"). The plaintiff believes that the defendants employed by DSNF are covering up Bibbs's murder. The plaintiff states that he is participating in an investigation about Bibbs with the Federal Bureau of Investigation. The plaintiff is not in protective custody presently, but believes that he needs to be moved.

Upon his arrival at DSNF, the plaintiff "experience[d] acts of retaliation due to his pursuit of legal action." (*Id.* at 14). Defendant Martinez "intentionally mislead Mr. Seabrooks into signing a blank reclass paper claiming his prior ones had been lost. This lead to an involuntarily transfer" of the plaintiff to the Whiteville Correctional Facility ("WCF"). (*Id.* at 15). He states that he also experienced retaliation at the WCF. He alleges that defendant Green, the WCF grievance chairperson, deprived the plaintiff of his right to the grievance process. "Defendant Heflin" yelled at the plaintiff

5

for filing grievances about Green. (*Id.*) Defendant Ramos tampered with the plaintiff's mail and shared confidential information with other inmates affiliated with the Crips gang. (*Id.*) Defendant Roberts also tampered with the plaintiff's mail. (*Id.*) Defendant Dr. John Doe 15 forged medical documents. (*Id*.)

IV. **Analysis**

 A. **Failure to respond to grievances claims**

To the extent that any of the plaintiff's § 1983 claims are premised on a defendant's response, or lack of response, to the plaintiff's grievances and/or complaints, a plaintiff cannot premise a § 1983 claim on allegations that an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective grievance procedure in the first place. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995)); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Since a prisoner does not have a constitutional right to an effective or responsive grievance procedure, the plaintiff's claims based on any defendant's failure to respond to plaintiff's grievances do not state a claim upon which relief can be granted. All such claims will be dismissed.

 B. **Failure to protect claims**

The complaint alleges that defendants John Doe 1, John Doe 2, Jane Doe 3, Jane Doe 4, John Doe 6, Jane Doe 7, Jane Doe 8, Mitchell, Baker, Martinez, Holloway, Ramos, Roberts, and Core Civic failed to protect the plaintiff from harm by Crips gang members. The complaint expressly states that these defendants (excluding Core Civic) are sued in their individual capacities only.

6

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984)). Although prison officials have a duty to protect prisoners from assault by other prisoners, the Supreme Court has recognized that jail and prison officials cannot be expected to prevent every assault before it occurs or to stop every assault in progress before injuries are inflicted. Thus, "a prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. That is, the inmate must show both that the risk of harm is sufficiently "serious," an objective inquiry, and that prison officials acted with "deliberate indifference" to inmate health or safety, a subjective inquiry. *Id.* at 837-38; *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L.Ed.2d 22 (1993).

Here, the complaint generally alleges that the Crips gang member inmates posed an objectively serious risk of harm to the plaintiff and that these defendants were subjectively aware of, and deliberately disregarded, any such risk. In particular, the complaint alleges that the plaintiff told each of these defendants that he feared for his safety, that Crips gang members had threatened the plaintiff with immediate physical harm and death, and the plaintiff repeatedly asked to be placed in protective custody, transferred to another facility, or moved to a unit away from the Crips gang members. The complaint further alleges that defendants John Doe 1, John Doe 2, Jane Doe 3, Jane Doe 4, John Doe 6, and Ramos not only failed to protect the plaintiff but actively encouraged Crips gang members to physically harm the plaintiff and were at times complicit in the gang members' plans to hurt the plaintiff.

The complaint further alleges that these defendants had reason to believe the Crips gang

7

members posed a serious risk of harm to the plaintiff because the defendants heard the gang members threaten to harm and kill the plaintiff, they knew the plaintiff had killed one of the gang member's family members, and the plaintiff told the defendants repeatedly that he feared for his safety. The complaint alleges that these defendants were deliberately indifferent to the plaintiff's risk of injury when they initially placed him or kept him in the same unit as the Crips gang members who had threatened to kill the plaintiff. The court finds that the plaintiff has, therefore, stated colorable failure to protect claims against defendants John Doe 1, John Doe 2, Jane Doe 3, Jane Doe 4, John Doe 6, Jane Doe 7, Jane Doe 8, Mitchell, Baker, Martinez, Holloway, Ramos, and Roberts in their individual capacities.

Although designation of "John Doe" or "Jane Doe" defendants is disfavored, it is permissible when the defendants' identities are not known at the time the complaint is filed but may be determined through discovery. *See Berndt v. Tennessee*, 796 F.2d 879, 882-84 (6th Cir. 1986). The court concludes that it would be inappropriate to dismiss the complaint against the "John Doe" or "Jane Doe" defendants at this juncture because of the likelihood that the identities of these defendants will be determined during discovery.

Next, the complaint also names Core Civic as a defendant in the caption of the complaint. (Docket No. 1 at 1). However, the complaint does not explain what part Core Civic purportedly played in the violation of the plaintiff's rights. Because it performs a traditional state function in operating a state prison, Core Civic acts under the color of state law. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996). However, unlike the state, Core Civic is not entitled to Eleventh Amendment immunity and may be liable under § 1983 "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 Fed. Appx. 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013)

(collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").

To hold Core Civic liable, the plaintiff cannot rely on the theory of *respondeat superior* or vicarious liability. *Street*, 102 F.3d at 818. Liability for failure to protect the plaintiff attaches only if Core Civic's policies were shown to be the "moving force" behind the plaintiff's injury. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989). Here, the complaint does not describe how a Core Civic policy is responsible in full or in part for the plaintiff's injury. Moreover, an allegation that Core Civic had a duty to hire and train competent staff is insufficient to identify a Core Civic policy and tie that policy to the plaintiff's injury. *See Baxter v. Corizon Health, Inc.*, No. 1:14-cv-1347-JDT-egb, 2015 WL 5707062, at *5 (W.D. Tenn. Sept. 28, 2016). Therefore, for purposes of the initial screening of the plaintiff's claims against Core Civic required by the PLRA, the court finds that the complaint fails to state Eighth Amendment failure to protect claims against Core Civic.

### C. Medical care claims

Next, the complaint alleges that Core Civic Health Department, the entity presumably responsible for providing medical care to inmates of the TTCC, and defendants Jane Doe 7 and Jane Doe 8, both nurses employed by Core Civic, failed to provide the plaintiff with appropriate treatment and medication for his mental health needs while he was an inmate of the TTCC. Failure to provide medical care, including care for mental health conditions, may give rise to a violation of a prisoner's rights under the Eighth Amendment. The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brooks*

*v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994).

A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." *Id.* (quoting *Farmer*, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Complaints of malpractice or allegations of negligence are insufficient to entitle plaintiff to relief. *Estelle*, 429 U.S. at 105-06. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Id.* at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Finally, to set forth a viable claim for the denial of medical care, the plaintiff must argue that his health suffered as a consequence of such alleged denial. *See Thaddeus-X v. Blatter,* 175 F.3d 378, 401 (6th Cir. 1999).

Here, the complaint alleges that defendants Jane Doe 7 and Jane Doe 8 failed to treat the plaintiff's suicidal ideation and suicidal attempts. The court finds that the medical and mental health problems resulting from the plaintiff's suicide ideation and attempt constitute a sufficiently serious medical need. *See Rouster*, 749 F.3d at 446. As to the defendant nurses' state of mind, the complaint alleges that the nurses provided no medical or mental health treatment to the plaintiff after he told the nurses he had tried to commit suicide by choking himself but could not go through with it. According

to the complaint, Jane Doe 7 observed the plaintiff's swollen face and puffy eyes and asked the plaintiff what happened; the plaintiff then disclosed that he had just attempted to choke himself with a sheet. The plaintiff "begged" both nurses to stay with him or place him on suicide watch but neither nurse complied or suggested an alternative course of treatment or action. (Docket No. 1 at 11). Essentially, the complaint alleges that the plaintiff received no mental health treatment at a critical time. Shortly thereafter, the plaintiff attempted suicide by cutting his wrist, arms, and neck. (*Id.* at 12).

The court finds that these allegations, "if true, would show that the official[s] being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [they] did in fact draw the inference, and that [they] then disregarded that risk." Id. Consequently, the court finds that the complaint sets forth non-frivolous Eighth Amendment claims against Jane Does 7 and 8 based on the inadequacy of mental health treatment with regard to the incident in question.

As to defendant Core Civic Health Department, the entity presumably responsible for providing medical care to prisoners at the TTCC, Core Civic is a state actor under § 1983 because its employees provided medical care to prisoners at the TTCC. *See West v. Atkins*, 487 U.S. 42, 54 (1988); *McCullum v. Tepe*, 693 F.3d 696, 699–700 (6th Cir. 2012). The law is settled that actions brought against state actors cannot be maintained under § 1983 on a theory of *respondeat superior, see e.g., Monell v. Dept. of Social Serv's of The City of New York, et al.,* 436 U.S. 658, 659, 691–95 (1978); *Siggers v. Campbell*, 652 F.3d 681, 695 (6th Cir. 2011) (citing *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 80–81 (6th Cir.1995), unless the state actor was directly involved in the alleged violations of the plaintiff's constitutional rights, *see Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir.2010) (internal citations and quotation marks omitted). For vicarious liability to attach here, Core Civic Health Department must have "at least implicitly authorized, approved, or knowingly

acquiesced in the unconstitutional conduct of the offending [party]." *Colvin*, 605 F.3d at 292 (citing *Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009)).

The Plaintiff does not allege that Core Civic Health Department was directly responsible for any of the alleged acts and/or omissions of its nurses who alleged failed to treat the plaintiff's mental health needs, nor can any such claims be liberally construed against Core Civic Health Department. More particularly, the plaintiff does not allege that Core Civic Health Department acted pursuant to a corporate policy or custom that violated his constitutional rights. Consequently, Core Civic Health Department is not liable to the plaintiff under the doctrine of *respondeat superior* regardless of what Core Civic Health Department's employees may or may not have done. Thus, the court will dismiss the claims against Core Civic Health Department for failure to state claims upon which relief can be granted.

### D. Claims against Crips gang member inmates

The complaint names Crips gang members John Does 12, 13, and 14 as defendants to this action. However, the plaintiff cannot sue these defendants in a § 1983 action. "A § 1983 plaintiff may not sue purely private parties." *Brotherton v. Cleveland*, 173 F.3d 552, 567 (6th Cir. 1999). Thus, "[i]n order to be subject to suit under § 1983 claim, defendant's actions must be fairly attributable to the state." *Collyer v. Darling*, 98 F.3d 211, 231-32 (6th Cir. 1997). As fellow inmates, John Does 12, 13, and 14 are not state actors under § 1983, and the plaintiff's § 1983 claims against these defendants must be dismissed.

### E. Failure to train and supervise claims

The plaintiff's claims against defendants TTCC warden John Doe 10 and TTCC health administrator John Doe 11 are based on the theory of *respondeat superior*. The complaint alleges

12

that John Doe 10 "was negligent in assuring his staff upheld their duty according to due standard" and that John Doe 11 "was negligent in assuring his staff upheld their duty." (Docket No. 1 at 14). The complaint further alleges that these defendants failed to adequately train and supervise their subordinates "and also fail[ed] to hold accountable those responsible after being informed." (*Id.*)

Negligence generally is insufficient to support a § 1983 action. *See Smoak v. Hall*, 460 F.3d 768, 785 (6th Cir. 2006). Even so, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676. There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted).

A supervisory official, who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). A failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an

13

administrative complaint about a completed act of misconduct does not.").

The complaint does not allege that either John Doe 10 or John Doe 11 was directly responsible for any of the alleged violations of the plaintiff's rights. Neither does the complaint allege that these defendants "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending" party. *Id.* Consequently, the complaint fails to state a claim § 1983 upon which relief can be granted as to John Doe 10 or John Doe 11 based on supervisory liability.

### F. Retaliation claims/denial of access to courts claims

The complaint alleges that the plaintiff "experienced acts of retaliation due to his pursuit of legal action. Therefore depriving him of his right of access to the courts." (Docket No. 1 at 14). The complaint names Mitchell, Baker, Martinez, Holloway, Roberts, Ramos, and Robertson (all at DSNF) and Dr. John Doe 15 (at WCF) as defendants to the plaintiff's retaliation claims.

As to Green at the DSNF, the complaint alleges that he "deprived Mr. Seabrooks of his right to the grievance procedures . . . withheld grievances from being processed, improperly forged grievances to prevent others from being processed, intentionally misled Mr. Seabrooks upon the status of grievances, wrongfully deemed an [sic] grievance inappropriate, rendered strategic responses to place Mr. Seabrooks in a life threatening position and avoid an investigation, and also conspired to cover [up] the matter addressed." (Docket No. 1 at 15).

Filing grievances through an inmate grievance process is protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, a defendant's withholding of a copy of the plaintiff's grievance, if it occurred, would not "deter a person of ordinary fitness from continuing to engage in that conduct," *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc), since copies of grievances are not required to be attached to a federal complaint. The plaintiff could have

14

filed his lawsuit without attaching his grievances. Indeed, the plaintiff filed his complaint without incident. The plaintiff has not alleged any harm resulting from the alleged acts of retaliation by Green. Therefore, the court finds that the plaintiff's allegations, even if true, do not state a claim for the denial of the plaintiff's federal constitutional rights, whether construed as denial of access to the courts or retaliation claims under the First Amendment.

As to the other defendants named with respect to the plaintiff's retaliation claims, the complaint alleges that they prevented the plaintiff from being placed in protective custody, intentionally misled the plaintiff as to the status of his incompatible requests, tampered with the plaintiff's mail, shared confidential information with other inmates, forged medical documents, and ultimately transferred the plaintiff from one facility to another. (*Id.*)

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X*, 175 F.3d at 388 . To establish a prima facie case of retaliation within the context of § 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id.* at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than *de minimis* harm resulting from it. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X*, 175 F.3d at 396.

The complaint specifically alleges that the TTCC defendants retaliated against the plaintiff by transferring him to the WCF. (Docket No. 1 at 15). However, even if this allegation is true, inmates have no constitutional right to be confined in any particular prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)(superseded by statute on other grounds);

15

*Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). Because the plaintiff does not have a constitutional right to be housed at any particular facility, he cannot state a viable retaliation claim under § 1983 based on any defendant's role in transferring the plaintiff from one facility to another.

As to the remaining alleged acts of retaliation, the court finds that those allegations are either lacking in specificity or fail to allege *de minimis* harm resulting from the claimed retaliatory acts. *See Ingraham*, 430 U.S. at 674 (1977); *Thaddeus-X*, 175 F.3d at 396. Consequently, the court finds that the complaint fails to state colorable retaliation claims against Mitchell, Baker, Martinez, Holloway, Roberts, Ramos, Robertson, and Dr. John Doe 15.

### G. Remaining Defendants

Finally, although the plaintiff names Jane Doe 5 as a defendant to this action, the plaintiff has not alleged any unconstitutional conduct by Jane Doe 5. The complaint merely alleges that she asked the plaintiff if he wished to take his shower, he declined, and she told Crips gang members that the plaintiff "had did something to the door and it would not open." (Docket No. 1 at 9). A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation, *Miller v. Calhoun Cnty.*, 408 F.3d 803, 827 n.3 (6th Cir. 2005); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), and the plaintiff here has failed to do so with regard to Jane Doe 5. Thus, the plaintiff's claims against Jane Doe 5 must be dismissed.

In the narrative of the complaint, the plaintiff alleges that "Defendant Heflin" yelled at the plaintiff for filing a grievance concerning defendant Green's actions. (Docket No. 1 at 15). However, the plaintiff did not list anyone named Heflin as a defendant to this action. Even if the plaintiff had named Heflin as a defendant, yelling at the plaintiff is not an actionable constitutional violation. *See*

*Thaddeus-X*, 175 F.3d at 398; *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987).

## V. Conclusion

In conclusion, the court has reviewed the complaint pursuant to the PLRA and finds that the complaint states colorable Eighth Amendment failure to protect claims pursuant to § 1983 against defendants John Doe 1, John Doe 2, Jane Doe 3, Jane Doe 4, John Doe 6, Jane Doe 8, Mitchell, Baker, Martinez, Holloway, and Ramos in their individual capacities only. The court further finds that the complaint states colorable Eighth Amendment deliberate indifference to serious medical needs claims pursuant to § 1983 against defendants Jane Doe 7 and Jane Doe 8 in their individual capacities only. 28 U.S.C. § 1915A. These claims survive the required PLRA screening and will proceed to further development. The court concludes that it would be inappropriate to dismiss the complaint against the "John Doe" and "Jane Doe" defendants at this juncture because of the likelihood that the identities of these defendants will be determined during discovery.

The Plaintiff's remaining claims against all other defendants fail to state claims upon which relief can be granted, and those claims will be dismissed.[1]

An appropriate order will be entered.

ENTER this 21st day of May 2018.

Aleta A. Trauger
United States District Judge

---

[1] There is no John Doe 9 or Jane Doe 9 named in the complaint.